**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
————————————————————————————

**BRIGETTE MABE, individually and on behalf**
**of all others similarly situated,**

                                        **Plaintiff,**

        **v.**                                                                    **1:20-cv-00591**

**WAL-MART ASSOCIATES, INC.,**

                                        **Defendant.**
————————————————————————————

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                        **DECISION and ORDER**

**I.      INTRODUCTION**

        Plaintiff Brigette Mabe commenced this putative class action seeking to "recover

untimely wage compensation and other damages for Plaintiff and similar hourly cashiers,

front end associates, stockers, receiving associates, sales associates, and other similar

manual labor positions . . . who work or have worked as manual workers" for Defendant

Wal-Mart Associates, Inc. from May 29, 2014 to the present.  Compl. ¶¶ 1, 21.  The

Complaint asserts two causes of action - a frequency of pay claim (First Cause of Action)

and a wage statement claim (Second Cause of Action).  *See generally, id.*   After

considering Defendant's initial motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court

dismissed the Second Cause of Action, but denied the motion with leave to renew as to

the First Cause of Action. *See* 03/18/21 Dec. & Ord., Dkt. No. 23 (also reported at *Mabe v.*

*Wal-Mart Assocs., Inc.*, No. 1:20-cv-00591, 2021 WL 1062566, at *5 (N.D.N.Y. Mar. 18,

                                        1

2021)).[1]

In the First Cause of Action, Plaintiff claims that Defendant violated New York Labor Law ("NYLL") § 191(1)(a) by failing to pay her and the putative class members their wages within seven calendar days after the end of the week in which these wages were earned, rather than on a bi-weekly basis.  Compl. ¶ 5; *see also id.* ¶¶ 6, 34-36, 39-42.  Plaintiff does not allege that Defendant failed to pay her any portion of wages due for her labor or that Defendant wrongfully deducted any portion of her wages. *See generally*, Compl.  The Complaint asserts that "[d]ue to Defendant's violations of [NYLL § 191(1)(a)], Plaintiff and the New York Class are entitled to recover from Defendant the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198." Compl. ¶ 42.

Defendant has renewed its dismissal motion, Dkt. No.  23, relying primarily on its originally filed briefs, *see* Dkt. Nos. 23-5 (Refiled Memorandum of Law in Support of Motion to Dismiss, dated August 14, 2020); 23-6 (Refiled Reply Memorandum of Law in Support of Motion to Dismiss, dated October 1, 2020), but also upon documents showing the legislative history of NYLL §§ 191 & 198, as well as supplemental authority handed down in the interim between the March 18, 2021 decision and the present.  Plaintiff opposes the renewed motion, Dkt. No. 24, and also cites to supplemental authority handed down in the interim.  Defendant files a reply. Dkt. No. 25.  The parties dispute whether the New York Court of Appeals' decision in *Konkur v. Utica Academy of Sci. Charter School*, 2022 WL 397774 (N.Y. Feb. 10, 2022), impacts the Court's decision on

---

[1]The Court presumes familiarity with this Decision and Order, as well as with that much of this decision that recounted the parties' arguments for and against dismissal.

this motion.  *See* Dkt. Nos. 33, 37.  This matter is now ripe for disposition.

**II.     DISCUSSION**

**Applicable Law**

The central question here is whether the Court should apply *Vega v. CM & Assocs.*
*Constr. Mgt., LLC*, 175 A.D.3d 1144, 107 N.Y.S.3d 286 (N.Y. App. Div., 1st Dept., 2019), a
New York State Supreme Court, Appellate Division case directly on point to the matter
raised in the First Cause of Action.  "As a federal court applying state law, we are
generally obliged to follow the state law decisions of state intermediate appellate courts ...
in the absence of any contrary New York authority or other persuasive data establishing
that the highest court of the state would decide otherwise." *Broder v. Cablevision Sys.*
*Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005)(quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S.
223, 237 (1940) and *Pentech Int'l, Inc. v. Wall St. Clearing Co.*, 983 F.2d 441, 445 (2d
Cir.1993))(internal quotes and brackets omitted); *see also Reddington v. Staten Island*
*Univ. Hospital*, 511 F.3d 126, 133 (2d Cir. 2007) ("Decisions of New York's intermediate
appellate courts are helpful indicators of how the Court of Appeals would decide, but
[federal courts] are not strictly bound by decisions of the Appellate Division, particularly
when [federal courts] . . . have persuasive data that the Court of Appeals would decide
otherwise.").

*Vega*

In *Vega*, the New York State Supreme Court, Appellate Division, First Department,
addressed a claim by a plaintiff who, like Plaintiff here, was paid her wages on a biweekly
basis contrary to NYLL § 191(1)(a) "which requires weekly payment of manual workers,"

3

and who sought to recover liquidated damages, as well as interest and reasonable attorney's fees, pursuant to § 198(1-a). *Vega*, 175 A.D.3d at 1144–45. The *Vega* Court noted that  § 198(1-a) applies to "'wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6.'" *Id.*  at 1145 (quoting *Gottlieb v Kenneth D. Laub & Co.*, 82 NY2d 457, 459 (NY 1993)).[2]  The Court found:

> The purpose of section 198(1-a) is "enhancing enforcement of the Labor Law's substantive wage enforcement provisions" ([*Gottlieb*, 82 NY2d] at 463; *see generally Pachter v Bernard Hodes Group, Inc.*, 10 NY3d 609, 615 [2008]), and contrary to defendant's argument that section 198 provides remedies only in the event of nonpayment or partial payment of wages (but not in the event of late payment of wages), the plain language of the statute indicates that individuals may bring suit for any "wage claim" against an employer. The remedies provided by section 198(1-a) apply to "violations of article 6" (*Gottlieb*, 82 NY2d at 463), and section 191(1)(a) is a part of article 6.

*Id.*

The *Vega* Court held that the term underpayment as used in NYLL § 198(1-a) "encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action." *Id.* The Court found that the word "underpayment," deriving from the verb "underpay," means to "pay less than what is normal or required." *Id.* (citing Merriam-Webster's Collegiate

---

[2]NYLL § 198, entitled "Costs, remedies," provides:

(1-a) . . . . In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.

NYLL § 198(1–a).

Dictionary 1364 (11th ed. 2012)). The Court held that "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required." *Id*.

The *Vega* Court rejected the "defendant's implicit attempt to read into section 198(1-a) an ability to cure a violation and evade the statute by paying the wages that are due before the commencement of an action." *Id.* The Court indicated that an employer "may assert an affirmative defense of payment if there are no wages for the 'employee to recover' (Labor Law § 198 [1-a])," but that "payment does not eviscerate the employee's statutory remedies." *Id*.

The *Vega* Court analogized the liquidated damages provision of the Labor Law to the same under the Fair Labor Standards Act of 1938 ("FLSA"). With regard to the latter, the *Vega* Court noted that the Supreme Court "has held that, regardless of whether an employee has been paid wages owed before the commencement of the action, the statute provides a liquidated damages remedy for the 'failure to pay the statutory minimum on time,' in order to provide 'compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.'" *Id.* at 1145-46 (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). The *Vega* Court found that "Labor Law § 198 (1-a), although not identical to the FLSA liquidated damages provision (29 USC § 216 [b]), has 'no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed.'" *Id.* at 1146 (quoting *Rana v Islam*, 887 F3d 118, 123 (2d Cir. 2018)(internal quotation marks omitted)). Accordingly, the *Vega* Court found that

5

"liquidated damages may be available under Labor Law § 198 (1-a) to provide a remedy to

workers complaining of untimely payment of wages, as well as nonpayment or partial

payment of wages." *Id.*  The *Vega* Court stated in a footnote:

> The legislative history of the 1967 amendment to section 198 reflects that in
> addition to imposing "stronger sanctions" to compel employer compliance,
> "[t]he imposition of liquidated damages will also compensate the employee
> for the loss of the use of the money to which he was entitled" (Governor's
> Approval Mem, Bill Jacket, L 1967, ch 310; 1967 N.Y. Legis Ann at 271).
> The employee loses the use of money whether he or she is never paid,
> partially paid, or paid late.

*Id.* at n. 2.

The *Vega* Court then held that "Labor Law § 198 (1-a) expressly provides a private

right of action for a violation of Labor Law § 191," finding that "Defendant's position that no

private right of action exists is dependent on its erroneous assertion that the late payment

of wages is not an underpayment of wages." *Id.* at 1146.

The *Vega* Court also found that

> even if Labor Law § 198 does not expressly authorize a private action for
> violation of the requirements of Labor Law § 191, a remedy may be implied
> since plaintiff is one of the class for whose particular benefit the statute was
> enacted, the recognition of a private right of action would promote the
> legislative purpose of the statute and the creation of such a right would be
> consistent with the legislative scheme (*see Sheehy v Big Flats Community
> Day*, 73 NY2d 629, 633 [1989]; *see also Rhodes v Herz*, 84 AD3d 1 [1st
> Dept 2011], *lv dismissed* 18 NY3d 838 [2011]). Here, plaintiff is a "manual
> worker" as defined by the statute, and allowing her to bring suit would
> promote the legislative purpose of section 191, which is to protect workers
> who are generally "dependent upon their wages for sustenance" *(see People
> v Vetri*, 309 NY 401, 405 [1955], citing former Labor Law § 196), and section
> 198, which was enacted to deter abuses and violations of the labor laws (*see
> P & L Group v Garfinkel*, 150 AD2d 663, 664 [2d Dept 1989] [section 198
> "reflect(s) a strong legislative policy aimed at protecting an employee's right
> to wages earned"]). It would also be consistent with the legislative scheme,
> as section 198 explicitly provides that individuals may bring suit against an
> employer for violations of the labor laws, even if the Commissioner chooses

6

not to do so (*see AHA Sales, Inc. v Creative Bath Prods., Inc.*, 58 AD3d 6,
15 [2d Dept 2008]).

*Id.* at 1146–47.

*Conflicting Authority*

Contrary to Defendant's previous argument, New York's appellate divisions are not

divided as to the application of *Vega* to situations similar to that presented in the First

Cause of Action.  Indeed, in *Phillips v. Max Finkelstein, Inc.*, 73 Misc. 3d 1 (N.Y. App.

Term, 2nd Dept., 9 & 10 Jud. Dists., 2021), the Second Department relied upon *Vega* in

finding that a lower court erred in dismissing a claim similar to that alleged in the First

Cause of Action. *Id*. at 2-4.  In doing so, the *Phillips* Court rejected an argument, like that

previously raised by Defendant here, that *Matter of IKEA U.S. Inc. v. Industrial Bd. of

Appeals*, 241 A.D.2d 454, 660 N.Y.S.2d 585 (N.Y. App. Div., 2nd Dept., 1997), represents

a holding contrary to *Vega.  See id.* at 3-4.

Furthermore, as indicated by the Eastern District of New York, since *Vega* "every

court in this Circuit to consider that decision appears to have followed its construction of

the New York Labor Law." *Caul v. Petco Animal Supplies, Inc.*, No. 20-CV-3534

(RPK/SJB), 2021 WL 4407856, at *3 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal

denied*, 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021)(citations omitted).  One exception to

this is, as previously cited by Defendant, *Phillips v. Max Finkelstein, Inc.*, 66 Misc. 3d 514,

115 N.Y.S.3d 866, 867-69 (N.Y. Sup. Ct., Suffolk Cty. 2019).  However, the Second

Department subsequently vacated the trial court's conclusion that no private right of action

exists for a frequency of pay violation under N.Y. Lab. Law § 191(1)(a).  *See Phillips*, 73

Misc. 3d at 2-3.  The other trial-level court cases previously cited by Defendant for the

proposition that no private right of action exits to recover liquidated damages and other relief because an employer does not comply with NYLL § 191(1)(a) are not persuasive because they predated *Vega*.  Thus, the case authority directly addressing the issue raised in the First Cause of Action is not unsettled, and therefore there appears to be no apparent reason to determine how the New York State Court of Appeals would decide the issues addressed in *Vega*.  See *Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 199 (2d Cir. 2003)("Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." )(quotation marks and citations omitted).

*Konkur*

Nevertheless, Defendant maintains that the *Konkur* decision "dooms Plaintiff's argument that §§ 191 and 198 provide a freestanding private right of action for untimely paid wages and compels dismissal of the First Cause of Action in the Complaint." Dkt. No. 37 at 6.  The Court does not agree.

In *Konkur*, the New York Court of Appeals addressed a claim by an employee that the employer had violated NYLL § 198–b, which prohibits "kickbacks" by making it unlawful for any person to "request, demand, or receive" part of an employee's wages or salary on the condition that "failure to comply with such request or demand will prevent such employee from procuring or retaining employment."  NYLL § 198-b(2).  A violation of the statute is a misdemeanor offense. NYLL § 198–b(5).  "Labor Law § 218 also provides for administrative enforcement of section 198–b by the Commissioner of the Department

of Labor. The statute empowers the Commissioner to grant affected employees restitution and liquidated damages in addition to imposing civil penalties." *Konkur*, 2022 WL 397774, at *1. The Court of Appeals found that "[b]ecause section 198–b contains no express private right of action, plaintiffs can seek civil relief in a plenary action based on a violation of the statute only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Id.* (internal quotation marks and citation omitted); *see id.* ("The issue presented in this appeal is whether Labor Law § 198–b, which prohibits wage kickbacks, contains an implied private right of action."). The *Konkur* Court then proceeded to analyze the three-factor test used to determine whether the legislative intent favors an implied private right of action. *See id.* (citing *Ortiz v. Ciox Health LLC*, 37 N.Y.3d 353, 360 (NY 2021); *Sheehy v. Big Flats Community Day*, 73 N.Y.2d 629, 633 (NY 1989)). Under this test, a court determines "'(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.'" *Ortiz*, 37 N.Y.3d at 360 (quoting *Sheehy*, 73 N.Y.2d at 633).

The Court of Appeals found that the plaintiff satisfied the first and second factors, but not the third. On the third factor, which "is the most important and typically turns on the legislature's choice to provide one particular enforcement mechanism to the exclusion of others because it demonstrates that the legislature considered and decided what avenues of relief were appropriate," the *Konkur* Court found that the statutory scheme for Section 198–b expressly "provides two robust enforcement mechanisms" – prosecution by

the Attorney General upon referral from the Department of Labor following an

investigation, and an action by the Commissioner of the Department of Labor under NYLL

§ 218(1). *See Konkur*, 2022 WL 397774, at *2-3 (internal quotation marks and citations

omitted). The Court of Appeals found that "[i]t is on this factor, in the face of significant

enforcement mechanisms provided for in the statute, that plaintiff's argument fails." *Id.* at

*2. The Court declined "to find another enforcement mechanism beyond the statute's

already 'comprehensive' scheme." *Id.* at *3 (internal quotation marks and citation omitted).

The Court of Appeals then turned to the plaintiff's argument that a private right of

action should be inferred from other provisions in the Labor Law, writing:

> [P]laintiff maintains that a private right of action for kickback violations should
> be inferred from section 198, which provides that "[i]n any action instituted ...
> upon a wage claim by an employee ... in which the employee prevails, the
> court shall allow such employee ... reasonable attorney's fees" (*see* Labor
> Law § 198[1–a]). Likewise, the dissent asserts that section 198 applies to
> any "action for wages" (dissenting op at ——). As we have made clear, the
> attorney's fees remedy provided for in section 198(1–a) must relate to "wage
> claims based upon violations of one or more of the substantive provisions of
> Labor Law article 6" (*Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 459,
> 605 N.Y.S.2d 213, 626 N.E.2d 29 [1993]). And it is Labor Law § 191 that
> "generally regulates payment of wages by employers and creates reciprocal
> rights of employees" (*id.* at 461, 605 N.Y.S.2d 213, 626 N.E.2d 29). While at
> least one federal court has held that section 198–b qualifies as such a wage
> claim under section 198 *(see Chu Chung v. New Silver Palace Restaurants,
> Inc.*, 272 F. Supp. 2d 314, 317 [SD N.Y.2003] [section 198 assumes
> employees may institute actions pursuant to the provisions of article 6,
> including section 198–b]), we disagree.
>
> Where the legislature intended for an article 6 provision to be enforced
> individually, it expressly provided a private right of action *(see Kloppel v.
> HomeDeliveryLink, Inc.*, 2019 WL 6111523, *3, 2019 U.S. Dist LEXIS
> 199891, *7-8 [WD NY, Nov. 18 2019, No. 17–cv–6296–FPG–MJP] ["the
> Legislature carved out express private rights of action for many provisions of
> the (Labor Law), but not § 198–b, suggesting that the Legislature did not
> intend to do so"]; *Chan v. Big Geyser, Inc.*, 2018 WL 4168967, *8, 2018 U.S.
> Dist LEXIS 148291, *24 [SDNY, Aug. 30, 2018, No. 1:17–cv–06473 (ALC)]

10

[same]). For example, in 2010, section 198 was amended to add a private right of action for certain notice requirements in section 195 (*see* L 2010, ch 564, § 7). A 2015 amendment clarified that section 194, which prohibits underpayment based on an employee's status in a protected class, can be individually enforced and that employees may recover treble damages for willful violations (see L 2015, ch 362, § 2). As we noted in *Ortiz*, "[t]hat the legislature chose not to provide a similar remedy for [the provision at issue] is further evidence that it believed that the [statute's] existing remedies would be adequate" (37 N.Y.3d at 364, ⸺ N.Y.S.3d ⸺, ⸺ N.E.3d ⸺). Contrary to the dissent's characterization, we do not hold that "the nonexistence of an express right" standing alone is "determinative" (dissenting op at ⸺).  In interpreting whether the legislature intended such a right despite that silence, the relevant point is that the legislature chose to provide for it in other provisions in this statutory scheme, but not for this one (*see Cruz*, 22 N.Y.3d at 70–71, 979 N.Y.S.2d 257, 2 N.E.3d 221). Rather than support an implied right of action here, analysis of the remedies provided for in section 198 further supports the conclusion that a plenary private right of action for violations of section 198–b would be inconsistent with the comprehensive statutory enforcement scheme.

*Konkur*, 2022 WL 397774, at *3.  The Court of Appeals found that the plaintiff "ha[d] not demonstrated that section 198–b meets the requirements of our well-established test for determining whether a private right of action can be implied from the statute." *Id.* at *4.

As is evident, *Konkur* did not address whether NYLL §§ 191 and 198(1-a) provide a private right of action for untimely paid wages, but rather addressed whether there was an implied right of action under NYLL § 198-b - a statute that does not have an express private right of action.  Section 198(1-a), by contrast, provides for an express private right of action for underpayment of wages.  *See* NYLL 198(1-a); *see also Elhassa v. Hallmark Aviation Servs., L.P.*, No. 21-CV-9768 (LJL), 2022 WL 563264, at *2  (S.D.N.Y. Feb. 24, 2022)("[T]he question in *Konkur* had to do with the implication of a private right of action [under Labor Law § 198–b, which prohibits wage kickbacks].  *Vega* rested on a different ground.  *Vega* . . . concluded that the NYLL [§ 198 (1-a)] 'expressly provides a private right

11

of action for [the late payment of wages].'")(quoting *Vega*, 107 N.Y.S.3d at 288).   As the Court of Appeals stated in *Konkur*, "[w]here the legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action." *Konkur*,  2022 WL 397774, at *3.  Under *Vega*, this is the situation here with Section 198(1–a) for a Section 191(a)(1) violation claim. *See Vega*, 175 A.D.3d at 1146.

Nevertheless, Defendant argues that "having barred employees from suing to recover wages extorted from them through kickback payments in Konkur - conduct for which the perpetrator is subject to criminal  prosecution - it is absurd to think the Court of Appeals would sanction a private right of action for a non-wage claim.  This is all the more so, given Plaintiff's position here that, even without any actual damages, she is entitled to recover liquidated damages and attorneys' fees, and then exponentially multiply those draconian penalties through a class action."  Dkt.  No. 37 at 5.   The Court does not agree.

Although the *Konkur* Court held that an employer-required kickback claim under Section 198–b did not qualify as a wage claim under Section 198, it did not address whether the late payment of wages is an underpayment of wages and thus a wage claim privately actionable under NYLL § 198(1-a) as found by *Vega*.  As to whether Section 198–b qualifies as a wage claim, the *Konkur* Court stated only that it disagreed with a federal court that stated the contrary. *See Konkur*,  2022 WL 397774, at *3.  It provided little discussion upon which to conclude that it would reject the *Vega* Court's conclusion that the late payment of wages constitutes underpayment of wages and thus a wage claim privately actionable under Section 198(1-a).  *See Elhassa*, 2022 WL 563264, at *2 ("'Defendant's position that no private right of action exists is dependent on its erroneous

assertion that the late payment of wages is not an underpayment of wages.'")(quoting *Vega*, 107 N.Y.S.3d at 288).  On its face, *Konkur* does not stand for the propositions that the late payment of wages is not the underpayment of wages, or that the late payment of wages is not a wage claim privately actionable under Section 198(1-a).  Thus, *Konkur* does not directly contradict the *Vega* Court's determination that the late payment of wages is an underpayment of wages, *see Vega,* 175 A.D.3d at 1145, 107 N.Y.S.3d at 288 ("Contrary to defendant's argument, the term underpayment encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action. . . . The moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required."), privately actionable under Section 198(1-a).  *See id.,* 175 A.D.3d at 1145, 107 N.Y.S.3d at 287–88.[3]

Further, the majority in *Konkur* stated:

> As we have made clear, the attorney's fees remedy provided for in section 198(1–a) must relate to "wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6" (*Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 459, 605 N.Y.S.2d 213, 626 N.E.2d 29 [1993]). And it is Labor Law § 191 that "generally regulates payment of wages by employers and creates reciprocal rights of employees" (*id.* at 461, 605

---

[3]The *Vega* Court stated:

The purpose of section 198(1–a) is "enhancing enforcement of the Labor Law's substantive wage enforcement provisions" ([*Gottlieb*] at 463, 605 N.Y.S.2d 213, 626 N.E.2d 29; *see generally Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609, 615, 861 N.Y.S.2d 246, 891 N.E.2d 279 [2008]), and contrary to defendant's argument that § 198 provides remedies only in the event of nonpayment or partial payment of wages (but not in the event of late payment of wages), the plain language of the statute indicates that individuals may bring suit for any "wage claim" against an employer. The remedies provided by section 198(1–a) apply to "violations of article 6" (*Gottlieb*, 82 N.Y.2d at 463, 605 N.Y.S.2d 213, 626 N.E.2d 29), and section 191(1)(a) is a part of article 6.

*Vega*, 175 A.D.3d at 1145, 107 N.Y.S.3d at 287–88.

N.Y.S.2d 213, 626 N.E.2d 29).

*Konkur*, 2022 WL 397774, at *3.   This is similar to the *Vega* Court's reasoning that Section 198(1–a) provides a private right of action to recover for Section 191(1)(a) violations. *See Vega*, 175 A.D.3d at 1145, 107 N.Y.S.3d at 287–88.  While the New York Court of Appeals might conclude that Section 191(1)(a) violations are not privately actionable under Section 198(1-a), the Court does not read *Konkur* as establishing that the New York Court of Appeals would reject the conclusions reached in *Vega.*

Defendant also argues that the Court should rely on *Konkur*'s analysis of the three-factor test to determine whether the legislative intent favors an implied right in the instant case. *See Konkur*, 2022 WL 397774, at *1 (citing *Ortiz v. Ciox Health LLC*, 37 N.Y.3d 353, 360 (NY 2021); *Sheehy v. Big Flats Community Day*, 73 N.Y.2d 629, 633 (NY 1989)).  This argument does not does not change the Court's conclusion here.  First, *Vega* found that Section 198(1–a) provides an explicit private cause of action for Section 191(1)(a) violations, obviating the need to determine whether legislative intent favors an implied right.  By contrast, *Konkur* addressed a different statute than in issue here, the statute that did not have an express private right of action, and the underlying violation did not amount to a wage claim.  Second, and assuming *arguendo* that the New York Court of Appeals would conclude that there is no express private right of action for a late payment of wages under Sections 191 or 198, the *Vega* Court addressed the three-factor test and found that an implied private right of action would be found.

"In New York, a private right of action may be implied where the 'plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private

14

right of action would promote the legislative purpose of the statute[,] and the creation of such a right would be consistent with the legislative scheme.'" *Caul*, 2021 WL 4407856, at *3 (quoting *Vega*, 175 A.D.3d at 1146).  To the extent Defendant contends that the statute already provides an administrative mechanism to enforce Section 191 violations, the legislative history reflects the administrative nature of the Section 191 scheme, and that there is no private right of action in § 198 for a mere untimely payment of wages, *Vega* addressed those concerns.   The *Vega* Court found that the purposes of Sections 191 and 198 are to protect employees who are "dependent upon their wages for sustenance" and deter labor law violations. *Vega*, 175 A.D.3d at 1146 (citation omitted).  "And contrary to defendants' emphasis on administrative enforcement, Section 198 lets an individual sue even where the administrator declines," *Caul,* 2021 WL 4407856, at *3  (citing *Vega*, 175 A.D.3d at 1147), which the *Vega* Court found to be "consistent with the legislative scheme, as section 198 explicitly provides that individuals may bring suit against an employer for violations of the labor laws, even if the Commissioner chooses not to do so."  *Vega*, 175 A.D.3d at 1147.

Based upon this, the Court is not convinced that the New York Court of Appeals would reach conclusions different than those expressed in *Vega*.  *See DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005)("[R]ulings from [state intermediate appellate courts] are a basis for 'ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'")(quoting *West*, 311 U.S. at 237 ).

III.    CONCLUSION

For the reasons discussed above, the Court finds that under *Vega*, Plaintiff presents a legally plausible claim in the First Cause of Action.  Accordingly, Defendant's renewed motion to dismiss the First Cause of Action, Dkt. No. 23, is **DENIED.**

**IT IS SO ORDERED.**

Dated: March 24, 2022

Thomas J. McAvoy
Senior, U.S. District Judge